(No. 16763.—Judgment reversed and award set aside.)
THE MADISON COAL CORPORATION, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CHARLOTTE TISHKAN, Admx., Defendant in Error.)

*Opinion filed February 18, 1926.*

1. WORKMEN'S COMPENSATION—*burden is on applicant to prove an injury arising out of and in course of employment.* The burden is on the claimant for compensation to prove by direct and positive evidence, or by evidence from which an inference can be fairly and reasonably drawn, that an accidental injury arose out of and in the course of employment.

2. SAME—*decision of commission cannot rest upon conjecture.* The decision of the Industrial Commission must be based upon facts in evidence and cannot rest upon conjecture and surmise, and liability for an accidental death cannot be based on a choice between two views equally compatible with the evidence but must be based on facts established by evidence.

3. SAME—*when evidence does not sustain finding of accidental death.* Where the weight of the evidence is that a miner died of influenza during an epidemic of that disease and it is positively established that such was the direct cause of death, a finding that the death was accidental, within the meaning of the Compensation act, because the miner's exposure to bad air while at work was a contributing cause of death, is mere conjecture, particularly where there is evidence that if the employee had suffered from bad air he had recovered from its effects before the disease set in.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. T. M. JETT, Judge, presiding.

GRAHAM & GRAHAM, for plaintiff in error.

JOSEPH A. LONDRIGAN, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Charlotte Tishkan, as administratrix of the estate of Michael Tishkan, deceased, claimed compensation for his death from the Madison Coal Corporation. She charged in her application that on November 15, 1918, Tishkan was overcome by bad air while loading coal in the company's mine and that his death resulted therefrom on the twenty-fourth day of the same month. The arbitrator found that Tishkan sustained accidental injuries which arose out of and in the course of his employment; that he left surviving the applicant, his widow, and three children under the age of sixteen years; that notice of the accident was given and demand for compensation made within the time prescribed by the Workmen's Compensation act, and that the applicant was entitled to $15.82 per week for 252 weeks and $14.36 for one week, because the injuries sustained caused death. On review by the Industrial Commission additional testimony was heard and the arbitrator's award was approved. The decision of the commission was confirmed by the circuit court of Montgomery county on February 28, 1925, and upon petition by the company this court granted a writ of error for a further review.

On the morning of November 15, 1918, Tishkan went to work in the mine of plaintiff in error about half-past seven o'clock and continued at work about an hour or an hour and a half, when he complained that he was sick. He walked to the bottom of the shaft, a distance of more than a mile, went up in the cage, walked to the washroom, about two hundred feet away, washed and changed his clothes and then walked to his home, about four blocks distant. Tishkan loaded coal with Martin Albrock and they left the mine together. Albrock testified that the room in which they worked was full of smoke on the morning in

question; that about two or three weeks later, although he could not fix the exact date, J. H. Miller, the manager of the mine, came to him to inquire whether the air in the mine was bad when he and Tishkan left, and that to an affirmative answer Miller replied that the air was good.

Frank Seiders, a miner, testified that he saw Tishkan in the mine on the morning he was taken ill, at about 7:30 o'clock, and again on the road to the bottom of the cage an hour later, when he looked pale and dragged one foot along as if he were weak; that air was forced into the room in which Tishkan worked by curtains and doors and had become bad the day before, and that the miners who worked in the room became weak and sick at the stomach and were compelled to quit work for two days. Another employee of plaintiff in error, William Watkins, testified that he was near the room in which Tishkan worked, and that the air in the room where he, Watkins, was employed was unfit for a man to work in because of the presence of black damp.

William Tishkan, son of the decedent, testified that he had never known his father to be sick for any length of time; that Dr. O. E. Black treated his father; that he, the son, was ill at the time, suffering from influenza, and that his mother had just recovered from that disease.

J. H. Miller, the manager of the mine, called by plaintiff in error, testified that after the application for compensation had been filed he was asked to investigate the claim; that in doing so he had a conversation with Albrock about the presence of bad air in the room in which Tishkan worked, but that this conversation occurred late in April, 1919. On cross-examination he admitted that he knew some of the men left the mine on the day in question, claiming that the air was bad.

Dr. O. E. Black's certificate of death, dated November 24, 1918, was offered in evidence. It set forth that Tishkan's treatment continued from November 18 to Novem-

ber 24, 1918, and that the cause of his death was influenza of one week's duration, with delirium tremens as a secondary cause. There was no autopsy.

Additional evidence was heard by the Industrial Commission on review. Dr. Black testified that he had practiced three years; that about November 16, 1918, in his office at Farmersville, Tishkan complained that he was suffering from bad air, dizziness, headache, nausea and weakness; that he saw Tishkan again at his home on November 18 and treated him daily until his death; that it was during the influenza epidemic; that at first Tishkan did not suffer from influenza but later developed a mild type of that disease, from which he appeared to recover, except that he still complained of dizziness, nausea and diarrhœa and developed delirium tremens; that these were symptoms of poisoning from bad air; that Tishkan's weakened condition, with acute delirium and influenza which he contracted, combined to cause his death, and that in the opinion of the witness influenza alone would not have resulted fatally. On cross-examination Dr. Black admitted that the distance from Farmersville, where he had his office, to Divernon, where Tishkan lived, is nine or ten miles, and that he did not know how Tishkan came or returned; that the influenza epidemic was at the time very serious and wide-spread all over the country; that influenza is a catarrhal inflammation of the upper respiratory tract, characterized by a general aching of the whole body and usually accompanied by fever and bronchitis, which are very deceptive and dangerous; that by the weight of opinion in the medical profession influenza is an extremely dangerous kind of pneumonia, and there is also a theory that it is a general septicæmia; that he diagnosed Tishkan's ailment as influenza because he had a general aching all over the body, pains in the limbs and back, a temperature of one hundred, pulse of ninety-eight and respiration twenty-eight; that at the time two members of Tishkan's family were ill

with influenza, and that, notwithstanding its symptoms disappeared in two days, influenza was the direct cause of his death.

John Hood, assistant mine manager of plaintiff in error, testified that the room where Tishkan worked was at least six thousand feet from the bottom of the shaft; that it would take a man about thirty minutes to walk from one to the other, and that on the morning of November 15, 1918, the air where Tishkan worked was clear and sufficient to breathe.

Four physicians, Dr. E. K. Lockwood, Dr. D. M. Ottis, Dr. Charles L. Patton and Dr. L. C. Taylor, all of whom had practiced medicine upwards of twenty years, were called by plaintiff in error. They testified that they recollected the influenza epidemic prevalent in the fall and winter of 1918-19 and had experience in the treatment of that disease; that it was infectious and very dangerous to life, and its symptoms were dizziness, nausea, diarrhœa and general aching and delirium; that they were familiar with the symptoms of gas poisoning of mine workers, and that if a miner had been exposed to bad air about an hour and a half, walked six thousand feet to the shaft bottom, went up in the cage, walked to the washroom, changed his clothes and went home, the effects of the bad air would be only temporary and have no connection with his subsequent illness. Dr. Lockwood was asked a hypothetical question embodying the facts shown by the applicant's evidence, and testified that in his opinion a man exhibiting such symptoms was suffering from influenza. The other doctors also expressed the opinion, based upon the same evidence, that Tishkan had contracted an acute infectious disease and that it caused his death.

Plaintiff in error contends that the award of compensation is erroneous because (1) no notice of the accident was given to it within the time prescribed by the Workmen's Compensation act; and (2) the finding and decision

that Tishkan died as the result of exposure to bad air in the mine are contrary to the manifest weight of the evidence. We deem it necessary only to consider the second contention.

Tishkan was exposed to the bad air in the mine not longer than an hour and a half. He left complaining that he was ill, walked over a mile, ascended in the cage, washed, changed his clothes and walked home. On the next day he went to Farmersville, nine or ten miles distant, and consulted Dr. Black. Two days later the doctor saw Tishkan at his home and diagnosed his illness as a mild type of influenza. Dr. Black continued to treat Tishkan until he died, on the twenty-fourth day of November, and in his certificate set forth that Tishkan's death was caused by influenza of one week's duration, with delirium tremens as a secondary cause. There was at the time an epidemic of influenza and two members of Tishkan's family were suffering from the disease. All the physicians who testified, including Dr. Black, agreed that the malady was highly infectious and dangerous to human life. Tishkan died nine days after his exposure to bad air in the mine. He suffered from influenza, as Dr. Black certified, for one week prior to his death. No mention was made in the doctor's death certificate of Tishkan's exposure to bad air or gas poisoning. While Dr. Black, in his direct examination on review, testified that in his opinion influenza alone would not have resulted fatally, yet on cross-examination he admitted that it was the direct cause of Tishkan's death. If Tishkan's exposure to bad air in the mine was a contributing cause of his death it is strange that his attending physician failed to state it in his death certificate. Drs. Lockwood, Ottis, Patton and Taylor, all of long experience and familiar with the effects of mine gas, testified that in their opinion Tishkan's exposure to the bad air in the mine had only a temporary effect and that he quickly recovered from it. The

same physicians agreed that he suffered from an acute infectious disease, which caused his death. There is no controversy that there was at the time not only an epidemic of influenza, but also that Tishkan's son was afflicted with the disease and that his wife was recovering from it. From the manifest weight of the evidence Tishkan's death was due not to his exposure to the bad air in the mine but to influenza, as Dr. Black, his attending physician, certified.

It is incumbent upon the claimant, under the Compensation act, to prove by direct and positive evidence, or by evidence from which such inference can be fairly and reasonably drawn, that the accidental injury arose out of and in the course of the employment. (*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) The liability of an employer under that act cannot be based on a choice between two views equally compatible with the evidence but must be based on facts established by evidence, and where the cause of death is equally consistent with an accident and with no accident, compensation will be denied. (*Ideal Fuel Co.* v. *Industrial Com.* 298 Ill. 463.) The decision of the Industrial Commission must be based upon facts in evidence and cannot rest upon conjecture and surmise. (*Springfield District Coal Co.* v. *Industrial Com.* 303 Ill. 528; *St. Louis Smelting Co.* v. *Industrial Com.* 298 id. 272; *Hafer Washed Coal Co.* v. *Industrial Com.* 293 id. 425.) The evidence in the instant case clearly preponderates in favor of plaintiff in error, and compensation should not have been awarded.

The judgment of the circuit court is reversed and the award of the Industrial Commission is set aside.

*Judgment reversed and award set aside.*